THE subject of controversy in this case was 400 acres of ¡land, in the county of Greenbrier, with a rigid of preemption, the plaintiff claimed by virtue of settlement in 1764. the dependents claimed by virtue of both a settlement and a survey, ¡alleging the survey, when they first pretendo- ¡ to derive a title by it. to have been made in 1774, altho tin urvey to which they alluded appeareth to have been made in y1 ee, 1775, by an ■orderof council, granted to the Greenbrier e« .rpany in 1751.
Before the special court of commissioners, coo-ritinted by the act of general assembly, passed in the may sessn-a of 1779, the plaintiff exhibited his clame, and the defuideuli; opposed it.
The commissioners, by their sentence, be 14 day of" January, 1780, affirmed the clame of the defendents, ¡xTUiying*Andrew Hamilton to be intitled to the 400 acres of land, by right of settlement, before the 1 day of January, 1778, being- prut of a survey of 1L00 acres, made for him, in the year i7H, also to have the right of preemption for 500 acres adjoining the settlement.
This sentence, from which the plaintiff appealed, entering a •caveat against emanation of a grant in consequence of it, was *52 • reversed the 9 day of October, 1782, by the general court, who -'ordered that a grant issue to the plaintiff fór' the said 400 acres ■of land, in right of settlement, and for 1000 acres more, in right sf preemption, to which no other person had any legal right or clame, f
.A motion to that court for an appeal from this judgment was denied, the court of appeals, on the 30th day of april, 1783, awarded a writ of error to the judgement; 29 day cf October following quashed the writ of error, declaring their opinion to be, that they had no jurisdiction over judgements, rendered by the general court, on caveats sued forth in that court against the judgements of district commissioners ; the next day set asidefihe cassation ,- and finally, on the first day of november. following, reinstated it. *
The' survey, under which the defendents clamed,-is certified to have been made by Samuel Lewisy-smveyor of 'the county,who at that time was an agent-of' the greenbrier company.
Upon the petition- of Andrew Lewis, also, an agent of the' greenbrier company, the court of appeals to whom it was addressed, on the 2 day of may, 1783, entered this opinion decree and order : the several claims of Thom,as Wallcer, esquirey on behalf of himself and the other members of the loyal company, and of Thomas Nelson, esquire, on behalf of himself and the other members of the greenbribr' company, to grants- of all the lands surveyed under several orders of council, bearing date the 12 of July, 1749, the 29 of October, 1751, the 1-4 of june-', 1753-, and the 16 of december, 1773, came on to be heard yesterday and this day, and thereupon the arguments of counsilfor the elamants, and of the attorney general for, the commonwealth having been fully heard and considered, it is the opinion of the' court, and accordingly decreed and ordered, that all surveys, made-by a county surveyor, or his deputy properly qualified according' to law, previousto the year 1776, and certified to have beenmade, by virtue of the orders of council to the loyal, and greenbrier companies, or either of them, ought to be confirmed; and that the register be directed to issue patents upon all such surveys as shall be returned and so certified, † this act of the court of appeal's was *53 authorized, if authorized at all, by the 10ill section of the statute before mentioned, which is to this purpose, all claims far lands upon surveys under orders of council, or entries in the council books, shall by the clamors be laid before the court of appeals, at a time appointed by the act; and shall be heard and determined in a summary way, without pleadings in writing, upon such evidence as in the opinion of the court the nature of the case may require ; and no dame shall be valid, but such only as shall be heard and established by the said court of appeals, and, •on their certificate, that any such clame hath been established, the register is required to issue a warrant or grant thereupon y and the attorney general is required to attend, on behalf of the commonwealth. *
A grant of the 1100 acres in the surveyors certificate to Andrew Hemilton passed the seal the 5 day of november, 1783; and the plaintiff, who was thereby deprived of that, to which his title was asserted by the judgment of the general court, for the land recovered by that judgement was included in the grant, filed a bill in the high court of chancery, complaining of the fraud, in procuring such a grant, and seeking redress.
The defendents, in their answer, relied upon the matter,which were discussed before the general court, on hearing the appeal from the sentence of the court of commissioners, and relied upon no other matters, the clames of the defendents to part of the 400 acres purchased from John Tackett, said to have been a joint settler of them with the plaintiff, and to the whole purchased from Ihecompanys agent,and certified by him to have been surveyed for the defendent Andrew Hamilton, are not indeed said to have been discussed, and do not otherwise appear to have been particularly noticed, in the judgement of the general court; but that the former of them must have been considered by that court is manifest by this paper, certified by the proper officer to have been prod m-ed and read at the trial : i do hereby assign all my right and title in and to a setflemsmt ami improvement made by me known by the name of Maz^eahh: t *54 first improven by myself and James Maze, to Andrew Hamilton, witness my hand and seal, this first day of January, 1780, John Tackett, seal, teste James Macorcle ; and that the other clameby survey, -which was mentioned in terms in the very sentence,, the rectitude whereof was the subject of disquisition, was likewise considered by the general court, no other cause to doubt appeareth but the mistake of a year in the date of the survey..
When the cause came on to be heard before the court of equity in October, 1789, the judgement of the general court, the 9: day of October, 1782, having reversed the judgement of the-court of commissioners, so far as that judgement related to the-400 acres of land lying in the county of Greenbrier,, called the-cabin place, and any right of preemption of the defendentsbelonging thereto ; and the said judgement of the general court having awarded that a grant should issue to the plaintiff' for the said 400 acres of land, in the right of settlement, and for 1000 acres, in right of preemption, to which no other person - hath any legal right or clame, complying with the terms of the-law, in such cases provided ; which judgement of'the general court the court of appeals have judicialy disaffirmed their power to reverse, by their order, the 1 day of november, in the-year 1783, quashing the writ of error brought for that purpose the high court of chancery delivered this
OPINION,,
That by the said judgement of the general court, the right clamed by the defendents, under the survey certified by Samuel Lewis, the 19 day of june, in, the year 1775, to have been made by him for the deféndent Andrew Hamilton, so far-as that survey includes any land to which the right of the plaintiff is, asserted by the judgement, was annulled : that the decree and order of the court of appeals, the 2 day of may, in the year 1783, hearing the several clames of Thomas Walker, and Thomas Nelson, on behalf of themselves, and the loyal and -■greenbrier companies, if it contravene, which however is contestable, the judgement of the general court, ought not to bar the plaintiff; not only because he was no party to the order and decree, but because the judgement of the general court, whose authority in that particular instance is supreme, and therefore equal/to the authority of the court of appeals in general, is prior in tirine to the said decree and order, and consequently will prevale against them ; and that the subsequent conduct of the defen,dent Andrew Hamilton, which was not sanctified by the said decree and order, in proceding to obtain a grant from the regis *55 ter of the land office, and in attempting thereby to frustrate and elude the judgement of the general court, was a fraud ; against which the plaintiff ought to be relieved ; and pronounced this
DECREE,
That the defendents be injoined from obstructing the plaintiff in preceding to carry the said judgement of the general court into execution, * and do, at his costs, convey to him the inheritance of the 1100 acres, mentioned in the said survey, and granted to the defendent Andrew Hamilton, by letters patent, the 5 day of november, in the year 1783, or so much thereof as shall be included within the bounds of the land to be surveyed for him, in pursuance of the said judgement; and do also pay irrito him his costs expended in prosecuting this suit: but the plaintiff is understood to be accountable, to the green-brier company, for so much of the land, as he shall take out of the defendents survey, in the proportion of three pounds for every hundred acres, and liberty is reserved to the parties to resort to this court, for its further direction, as to any matter relating to the subject of this decree.
The author of this decree, some time after it was signed, thought it not correct in asserting the plaintiffs right to more than 400 of the 1100 acres of land, because the residue might be appropriated by the survey, in 1775, the settlers right of preemption being given not before 1779, and being different from the right of settlement, which latter the legislature, by their act of that year, recognize in terms implying a preexistence of the right, but, upon further revision, he is inclined to approve that part as it is, for if the right by settlement ought to prevale against a survey posterior to the settlement, to prove which will be attempted hereafter, that its appendage, or shadow as aim called it, the right of preemption, should accompany it seo; noth a natural consequence, and he confesseth another pari of the decree which admitteth the plaintiff to be accountable to the greenbrier company for three pounds for every hundred afina of the land recovered by him to be wrong, quacunque via, dala; for if the settlement right be prevalent against the right by survey, the settler is iutitled to a grant upon payment of the fiscal composition only ; and if the right by settlement prevale not against the other, the plaintiff, not being in titled to the grant, *56 can not be bound to pay any money for it. and no othey error in the decree is yet discerned. '
But, on the 20 day of june, 1791, the court of appeals, before whom the decree was impeached, declared it in general terms * to be erroneous, and, reversing it, made the following
DECREE and ORDER,
That a survey be made of the 400 acres of land for the settlement, to lie south of a line, to be run from a spring opposite to Christopher Wachubs, as the same shall appear to have been made by agreement between the appellee and John i ackett in the proceedings mentioned, so as- to include the cabin smd settlement, and which may be laid down as either party shall direct, to enable the court of chancery to decide between them.' on the propriety or reasonableness of the location ;■ that the appellant Andrews patent of 1100 acres be also surveyed and laid' down, to shew how far the same doth interfere with the said 400 acres, which being adjusted by the court of chancei y, that the said appellant be decreed to convey to the appellee the inheritance of so much of the said 400 acres as shall be found to lie within the bounds of the said appellants patent, with warranty against himself, and all persons claming under him, and deliver him possession thereof, upon the appellees paying to him, at the rate of three pounds per hundred acres, for the quantity so to be conveyed :■ and as to the residue of the said 1100 acres, that the bill be dismissed, but the appellee is, nev *57 «rtheless, tobe at liberty to procede to survey the said 1000 acres of land for his preemption, if he can find land to satisfy the same without interfering with the said patent or other prior clame. ;
The decree, in the teims of it, affiordeth scanty matter, but certain propositions reported, from good authority, to have been the foundation of it afford abundant matter, for
REMARKS.
I. The court of appeals are believed to have assumed in this suit, the object of which was to remove an obstruction to the execution of a judgement of the general court, a power to correct that judgement, * which they had renounced the power to correct, in a writ of error.' by the act of their constitution, they are impowered to affirm or reverse decrees judgements and sentences intirely, or, if they do not affirm or reverse them intirely, may give such decree, judgement or sentence as the court, whose error is sought to be corrected, ought to have given.— but they can only correct the decree judgement or sentence which is brought before them by appeal or writ of error, in this case the general court adjudge and order that a grant of 400 acres of land shall issue to the plaintiff, the defendents bring this judgement, before the court of appeals by writ of error.— then was the time to affirm, reverse, or reform the judgement, the court of appeals do neither; because they have no jurisdiction of the matter, or because, in other words, they have no power to reverse or reform that judgeuent.
Notwithstanding this, what is done? a few days after the writ of error was quashed, Andrew Hamilton, on the survey of 1100 acres, procures a grant to himself of the land, which the general court had adjudged and ordered to he, granted to the plaintiff, this grant was obtained by a deception practised upon the register, for that officer, if he had known that the land granted to Andrew Hamilton included the land which, by a judgement of the general court, irreversible by the court of appeals, he had before been ordered to grant to the plaintiff, ought not to have issued, and therefore probably would not have issued such a grant to Andrew Hamilton, to be relieved against this fraud, the plaint-"' "rought this suit., the high court of chancery put the plairm i u the state in which he would have *58 been, if the fraud had not been practised, the- court of appeals,, reversing that decree, reform the general courts judgement; for of the 400 acres, to the whole of which that asserts the plaintiffs title, he is allowed only so much , ' is on one side of a dividing line, and for that he is to pay f: pro pounds by the hundred acres.
The propriety of reforming, in an &: jh;al suit, a judgement which was incorrigible in a writ of error, and the consistency of this decision with that of november, 1783, by the court of appeals, have, not been shewn, as is believed.
But let the case be now considered in the same maimer as if the right of the defendents, by the survey, or which is the same-tiling, the right of the greenbrier company, had not been discussed before the court of commissioners or the general court.
II. The court of appeals are reported lo have assented, whether unanimously, or by a majority only, hath not transpired, to this proposition, that the companysright to this survey stands established by the decision of that court in may, 1783, unalterably by any tribunal; so that the plaintiff, claming by right of settlement, cannot call in question the validity of the survey, and right of the company, or of the defendents, who in this instance represent the company, before any court.
The truth of this proposition cannot be admitted; because, first, the plaintiff was not a party to the preceding, then before-the court of appeals, and the decision between any two parties cannot in law or equity conclude the right of another who deriveth it not from either of them ; * secondly, this act of the court of appeals which is called a decision, is a manifest delegation to the register of the land office of a power committed by the statute to the court itself, and altho that court is indeed supreme, and its decisions not alterable-, elsewhere, in cases where before it are brought the sentences of inferior tribunals, to be approved or corrected finally ; yet when a matter is referred to the court of appeals in the first instance, as was the present case, where the judges of it do not act in their appellate character, that their determination is definitive, so that the justice of it cannot be revised even by themselves, perhaps may be disputed, as it undoubtedly might have been disputed, if the determination had been referred to the,men who compose that court, designated by their names, and'this, without derogation *59 from their power, since by them the matter, brought up by writ of error or appeal, may be ultimately adjusted.
III. The court of appeals are reported to have denied that any right, by settlement on unappropriated land, existed before the recognition of such a right by the statute of 1779, so that between the plaintiffs right, by settlement, which was not before that act, and the defendents right, by survey, which was four years before it, a competition for priority could not be.
This doctrine shall be here examined.
Between the kings proclamation, in 1763, and the governors order in council of december, 1773, ail other people as well as mere settlers, were restrained from obtaining grants of land on the western waters, this restraint is conceived to have been unlawful, lauds, before they were granted, were indeed called the kings lands, but he was only the dispenser of them to others, being unable to appropriate, by his single act, one acre to his own use, and, on the contrary, being bound to grant them to those, who were proceeding, in the course prescribed by law, to acquire exclusive ownership of them, and who if not obstructed in that course, would have been complete proprietors, those who affirm the regal territorial dominion to have been other than that which is now defined, if they attempt to maintain it by adjudications of english courts, or even of american courts before the late revolution, or by acts of english governors, are warned, that the authority of those documents in this question is denied.
In the mean time, these propositions are assumed, because they are believed to he undeniable : 1 that every man had power to enter with the surveyor for any land not exceeding a certain quantity, and not having been appropriated, and had a right to a royal grant of the land, this power and right have not perhaps been asserted by legislative acts in direct terms, because such an assertion seemed unnecessary ; but the existence of the power and right is supposed and implied by the ant passed in 1748, chap 14, of the edition in 1769, sect. 2, and by severa! other acts ; and such a supposition and implication in such a case as this are conceived to be equivalent to an assertion in positive terms, the 2 proposition is, that the kings proclamation restraining the exercise of the power, and interrupting the enjoyment of the right, was void, and his withholding die grants was contrary to his duty, if these premisses be true, he, who, being illegally restrained from using the rociaos of appropriating a thing unoccupied, takes possession of ii, and is hindered from procuring a sanction of the possession m solemn form, by another who ought to supply the form, such a pos *60 sessor is affirmed to have an equitable right to the thing possessed ; affirmed with the more confidence because it coincides with the sentiments of the legislature declared in the act now the subject of consideration ; and coincides too with the primitive natural right which resumes its vigor when its correspondent civil right is denied, that the plaintiff had this equitable title, aftt-r the judgement of the general court, supporting it as a settlement right, is incontestable, whether the time of settlement were the epocha of the title will be enquired in considering the next proposition to which the court of appeals are reported to have assented, and that unanimously, it is
IV. That a right clamed by settlement, cannot, in any case, be opposed to a right, clamed by survey, authorised by order of council.
In examining this proposition the following questions are propounded. J, what is a right by survey ? 2, what is a right by settlement? 3, at what time a right by settlement originated? and 4, to what time a right by survey ought to have a relation ? which questions will be solved by the true exposition of the statute of may session 1779.
1. What is a right by survey ? the words of the first section, after extermination of those which are unimportant in this disquisition, are, all surveys of waste and unappropriated lands, upon the western waters, made before the 1 day of January, 1778, by the proper officer andfounded on orders of council, shall be and are declared valid, from this section alone can the survey, by which the defendents clame, derive validity; for by the third section, orders of council, except so far as they had been carried into execution by actual surveys in manner before mentioned, that is, by surveys of waste and unappropriated lands, &c , are declared void, ii the lands surveyed for the defendents were waste and unappropriated, the survey, in which all the other characters requisite by the act are admitted to be verified, was valid, and the right of the defendents, undeniable ; but if the land was wholy or partialy appropriated, or, to apply it to the present case, appropriated by settlement, the survey was wholy or partialy invalid.
2. What then is a right- by settlement? in the preamble to the fourth section, the waste and unappropriated lands, upon which people had settled, are called property acquired by them. a thing appropriated, and a thing whereof one hath acquired, the property, are convertible terms, if they be convertible terms, the lands on which people had settled were appropriated, and consequently a survey of them, by authority of an order of council, after that appropriation, was not valid, by the first sec *61 tion. but this appropriation by settlement is said not to have been an appropriation before it was recognized by the a^t of 1779, and therefore was posterior to the survey in 1775, at •which time, consequently, the land was waste and unappropriated. this introduceth the
3. question, at what time a right or appropriation by settlement originated? that it originated at the time of settlement is believed to be demonstrable from the phraseology and reason of the act. the preamble to the fourth section is in these words: whereas great numbers of people have settled in the country upon the western water", upon waste and unappropriated lands, for which they have been hitherto prevented from suing out patents or obtaining legal titles by the king of Great-britains proclamations or instructions to his governors, or by the late change of government, and the present war having delayed, until now, the opening of a land office, and the establishment of any certain terms for granting lands, and it is just that those settling under such circumstances should have some reasonable allowance for the charge and risk they have incurred, and that the property, so acquired, should be secured to them, and the enacting words aro these: that all persons who, at any time before the 1 day of january, in the year 1778, have really and bona fide settled themselves or their families, or at his, her, or their charge, have settled others upon any waste or unappropriated lands on the said western waters, to which no other person hath any legal right or clame, shall he allowed for every family so settled, 400 acres of land, or such smaller quantity as the party chooses, to include such settlement, and where any such settler hath had any survey made for him or her, under any order of the former government, since the 26 day of October, in the year 1763, in consideration of such crttlemeid for less than 400 acres of land, such settler, his or key heirs, may clame and be ullowed as much adjoining waste and mmppropí iated land, as together with the land so surveyed will make up .¡he quantity of 400 acres, now 1, the reasonable allowance, wb oJi the preamble declares that the settlers ought justly to huye, o cc a remuneration of services performed at their charge a?«J r.ul, in protecting the frontier, deemed meritorious by the lawmakers, the merit was in the settlement, and therefore is necessarily eo evous with the settlement, the right to remuneration is the correlative of the merit, and therefore of the same age with it, and consequently must begin with the settlement too. 2, the act declares the land settled by them to be their property, acquired by them, and acquired at their charge and risk, the act therefore did not create the property, or bring into being a right which existed not before. it acknowledged the property or righ t *62 indeed, but acknowledged it to be a pre-existent property or right, pointing out a mode by which the owners might sue out grants, which they had been theretofore prevented, without their own default, from suing out, in order to secure their legal titles; planely intending to put the settlers in the state in which they would have been, if the royal proclamation had not inhibited the surveyors from receiving and making entries. The property or right of the settlers was consequently acquired, not by the act, but before it, and if before it, must have begun with the settlement, which was the mean of acquiring it. that the law-makers intended to put settlers in the same state, as to the antiquity of their titles, with those who claimed by surveys, or by entries, or orders of council, before the act, is manifest by the 6 section, enacting, that persons suing out grants, upon surveys theretofore made, under entries with surveyors, or under orders of council, for which rights had not formerly been lodged, in the secretarys office, and also those, suing out grants for lands, upon the western waters, allowed to them in consideration of their settlements, or under former entries with the county surveyor, for lands upon the eastern waters, should be subject to payment of the usual composition money, under the former government, and to no other charge or imposition, save the common office fees, the right of a settler, if it originated with the settlement, was a complete right at that time, although, not formaly declared to be legitimate before the statute in 1779, for an act sanctified by a subsequent ratification is as legal and as much an act of the time when it was commenced, as if an authority to do the act had been prior to it.
An argument, urged against the preceding exposition of the 4 section, hath been drawn from a verbal criticism on a part of it. the criticism is stated thus: the legislature, on purpose to prevent the construction, by which the settlement-right would be made to exist before the act which recognized it, to the words, waste or unappropriated lands, add the words, to which no other person hath any legal right or clame, that is, hath in 1779, not had at the time of settlement, any legal right or clame, upon which two or three observations will be made. 1, if the words, waste and unappropriated lands, mean lands to which none have right or clame, and he who affirmeth them to mean any thing else is required to say what that meaning is, then to the words, waste and unappropriated lands, the addition of, to which no other person hath any legal right or clame, is a tautology, for the meaning of the sentence, without them, would have been the same as it is with them. 2, unless the word, hath, import that he, who hath a right to day, could not *63 have the same right before, which the critic probably will not venture to say, how will this prove, that he who had a right in 1779, when the act was made, might not have the same right in 1764, when the settlement was made? and 3, let the words ho read, as the critic ivould have them understood, thus; people who have settled on waste or unappropriated lands, to which no other person, now, in 1779, hath, not at the time of settlement had, any legal right or clame, shall be allowed, for every family, 400 acres, now to whom do the words, hath, and had, refer? to the people who settled ? no man will answer this affirmatively; and if they refer to other person, the criticism, instead of oppugning, aids the right by settlement, postponing to it a subsequent survey.
Another argument, urged against the preceding exposition of the 4 section hath been drawn from the preamble to the 7 section, in these Words: whereas upon lands surveyed for sundry companies several people have settled, &c. and from the enacting part in these words: all persons so settled shall have their titles confirmed, upon payment of the price for which the companies or their agents had publicly offered the lands for sale, whence was inferred, that settlers upon lands surveyed for the companies, after the settlements, as -well as before, could entitle themselves no otherwise than by purchasing from the companies, but this section planely designates settlers upon lands surveyed before the settlements only, as is manifest from the diction, the words, upon lands surveyed for sundry companies, many people have settled, Spc. to include settlers before the surveys must be paraphrased thus: upon lands tohich have been surveyed for sundry companies many people had settled before the lands were surveyed. but J, the more natural, the only true, explication of the terms is, upon lands which had been surveyed many people have settled since the lands were surveyed; so that the surveying must have preceded the settling, if a man should say, into the house built for me one entered, or on the horse brought for me one rode; would any hearer understand that the building of the house, or the bringing of the horse, was posterior to the entry into the one, or the riding of the other ? is this less preposterous than the exposition of this 7 section, by which it would comprehend settlers on lands before they were surveyed for the companies ? 2, by the enacting part of this section, the companies ivere bound to confirm the titles of settlers upon lands surveyed, and not before the settlements notoriously reserved by the companies for their own use. but how could lands, not surveyed before they were settled, be notoriously reserved before the settlement by the companies for their own use ? also by the *64 enacting words the settlers were to pay interest on the consideration money from the times of settlement, wmld this be just, and can one suppose it to have been intended, where the survey was after the settlement ? in this case the survey was more than ten years after the settlement.
If the appropriation by settlement be an appropriation at the time of settlement, which is believed to be proven incontestably by the words of the statute ; the settlement of the plaintiff having been in 1764, the land was not waste and unappropriated in 1775, when the survey for the defendents was made ,• consequently the survey was not valid.
But perhaps the order of council, in 1751, may be said to have appropriated the land, and therefore to have prevented the efficacy of the plaintiffs settlement posterior to it: which leads to the
4th question, to what time a right by survey ought to have a relation, that is, in this case, whether the survey shall have the same effect as if it had been an act of the time when the order which authorized it was granted ? in other words, the question is, whether the order of council appropriated from the date of it all the lands within its limits ?
By this order, which is not among the exhibits, otherwise than as the substance of it is stated in the forementioned petition of Andrew Lewis from which is extracted what followeth, leave was granted to the greenbrier company to take up 100000 acres of land, lying on Greenbrier river, northwest and west o£ the Gowpasture and Newfoundland ; and a time was limited, within which the company was required to pay the rights, and to procure the surveys to be made.
This order, with others, except so far as it had been carried into execution by actual surveys before the first day of january, 1778, was declared ¡void by the third section of the act of 1779. if that act had not ) passed, an order, the terms whereof are so vague and indefinite, perhaps would not have withstood a legal inquisition into its validity, even if the interest of others individualy were not opposed to it.
But the order, if its terms import, or if it be expounded so as to purport, a grant of authority to this company to seise parcels of land, for which other men had entered, or on which other men had settled, before particular locations by the order, indicated by actual surveys, would so far have been an invasion of the peoples rights in general, for reasons explaned before, and if that be true, the survey, by which the defendents clamed, cannot have a ralV.'on to the order, by authority of which it was made, for thu ü:>suffers not a relation to work a wrong.
Y. From the . . nsitions of the court of appeals, an ordinary *65 judge would have expected a dismission of the plaintiffs bill intirely. hut that court, on the contrary, have made a decree partly in his favor.
The judge of the H. C. G. hath been informed of the considerations, on which this part of the correcting decree was formed; but he will say nothing of them more than that they are not suggested by any part of the act of 1779; and that this act, and two or three others, without those considerations, supply sufficient light for deciding the present question.
The judge of the H. C. C. who is bound to adopt the decrees of the court of appeals, for lie must register them, and enforce execution of them, when he is performing this duty, in such an instance as the present, where the sentence for which he is compelled to substitute another, was the result of conviction, imagines his reluctance must have in it something like the poignancy which Galileo suffered, when, having maintained the truth of the copernie-in in opposition to the ptolomaic system, he was compelled, by those who could compel him, to abjure that heresy.
After the foregoing remarks were closed, the writer of them was favored with this
‘ARRANGEMENT of JURISDICTIONS
‘ for ascertaining clames under the act of 1779, to shew that, ‘ though the rules of grammar may not be trangressed, by ‘construing the words, ‘prior clame,’ in the settlement clause, ‘not as prior to 1779, but as prior to the settlement in question, ‘ yet such construction does not consist with the words and ‘ spirit of the whole law, taken together.
‘ The first clause establishes all surveys regularly made uo- ‘ der entries, orders of council particularly defined, or tho kings ‘ proclamation.
‘ Those under orders of council were to be laid before, and ‘ decided upon, by the court of appeals ; and with them no ‘ other tribunal could intermeddle.
‘ Surveys under entries, or the proclamation, patents were to ‘ issue on of course, unless a caveat was entered in the regis- ‘ ters office, which was to be heard in the general court, and ‘ with these the commissioners in the country had nothing to ‘ do, either to aid, or destroy them.
‘ The commissioners were to act upon mere settlement clames, ‘ not opposed by actual surveys confirmed before, and between ‘contending claimants upon the waste lands of the common- ‘ wealth, to decido by priority of settlement; another branch of ‘ duty was assigned them, to enquire between contending clames *66 ‘of settlements under the companies, not to judge of the validity of the companies survey, for that was referred to the ‘court of appeals, but to decide who, by priority of settlement, ‘had a right to a grant from the company, on paying the ‘ purchase.
‘ This being the general arrangement; can those lands be said, ‘under the settlement clause, to be waste and unappropriated in ‘1779, and liable to be granted by the. commissfoners, which ‘had been before regularly surveyed, and that survey before ‘ confirmed by the same act, unless impeached before another ‘tribunal ? and will not the words, ‘ to which no other person. ‘ ‘ hath a prior legal clame or title,’ include an exemption of the ‘surveys so confirmed? i am sure the interpretation is more ‘natural, more proper, as making the act consistent with itself, ‘ and i believe at least as grammatical as the other.’
COMMENTARY.
Though the rules of grammar may not be transgressed, by construing the words, ‘prior clame,'’ Spc. yet such construction does not consist, épcf] until the inconsistency be particularized, one, who doth not yet see it, can only say, that the words of the settlement clause (that is the fourth section) of the act understood in the proper sense of them, seem to breathe no sentiment, which doth not harmonize with every other sentence in the law taken together.
The first clause establishes all surveys regularly made, $*c.] the first section of the act declareth all surveys of WASTE and UNAPPROPRIATED lands, made, &c. good and valid, this quotation therefore leaves the question, whether the land surveyed in this case was appropriated by a settlement before the survey? undecided, otherwise than by a simple affirmation, that it established all surveys, without distinction, that is, by taking for granted what is denied ; a kind of argument which one party in this controversy useth as if it were not a sophism.
Those under orders of council were to be laid before, and decided upon by, the court of appeals;] by the decree, as it is called, of the 2 day of may, 1783, directing the register to issue patents upon all such surveys AS SHALL BE RETURNED, or by any other words in that act of the court of appeals, doth this survey, or any other survey, appear to have been laid before that court, and, if not laid before them, to have been established, that is legaly established ?
And with them no other tribunal could intermeddle.] by the seventh section of the act, people, who had settled upon unpatcnted lands, surveyed for companies, except only such lands *67 as, before the settlement of the same, were notoriously reserved by the companies, for their own use, shall have their titles confirmed by the members of such companies, this decree of the 2 day of may, 1783, did not decide the question between <he settlers and companies in such cases. It could not decide the question in cases where the surveys were returned after the decree, upon which alone it seemeth to operate, if then no other tribunal could intermeddle with this matter, the settlers must lose their rights, although they were able to prove thejr settlements before the reservations, yea, although no reservations had been.
Surveys under -entries, or the proclamation, patents were to issue on of course, unless a caveat, $*c.] this is certainly correct, but uuimportant.
The commissioners were to act upon mere settlement clames, not opposed by actual surveys confirmed before, and between contending clamauts upon the waste lands of the commonwe dth, to decide by priority of settlement ; another branch of duty was assigned them, to enquire between contending clames of settlements under the companies, not to judge of the validity of the companies survey, for that was referred to the court of appeals, but to decide who, by priority of settlement, had a right to a grant from the company, on paying the purchase.instead of this farrago of text and gloss let the unsophisticated words of the act be substituted, they are, ‘ the commissioners have power to ‘ hear and determine titles, clamed in consideration of settle- ‘ ments, to lands, to which no person hath any other legal title, ‘ and the rights of persons claming preemption, as also the •‘rights of persons claming unpatented lands, surveyed for com‘panies, and settled.’
This being the general arrangement;] what then? let us try whether it will shew what it was stated to shew, the argument intended by the arrangement may he exhibited thus : by the eighth section of the act, jurisdiction being given to commissioners to hear and determine the rights of people claiming in virtue of settlements ; by the same section, and by smne other acts, jurisdiction being given to the general court to hear and determine the rights of people, who had entered caveats against emanations of grants upon surveys returned ; and by the tenth section of the act of 1779, jurisdiction being given to the court of appeals to hear and determine clames laid before them for lands upon surveys under orders of council, to the discussion of which clames the attorney general was required to attend, on behalf of the commonwealth ; this being the general arrangement of jurisdictions, it shews, that, though the rales of grammar .may not he transgressed, by construing the words ‘prior clame’ in the *68 settlement-clause, not as prior to 1779, but as prior to the settlement in question, yet such construction does not consist with the words and spirit of the whole law taken together, this perfctaps may pass for demonstration with those who have sagacity to discern a concatenation of the arrangement with what is said to be shewn by it.
Can those lands be said under the settlement clause to be waste and unappropriated * in 1779?] this is nothing more than a repetition of the principal question, namely, whether the lands in controversy, by the words of the fourth section of the act of 1779, were, notwithstanding the settlement thereon by the plaintiff in 1764, waste and unappropriated, so that the survey thereof for the defendents was good and valid by the first section of the act?
And liable to be granted by the commissioners,] if the plaintiff had, by his settlement, acquired a property in the land, as hath been attempted to be proved, he ought not to be deprived of that property, because the commissioners had no power to. award it to him.
Which had before been regularly surveyed,] if' the land was. appropriated by the settlement, the posterior survey of it was-not a. legal survey, so far as it included the settled land.
And that survey before confirmed by the same act, unless impeached, dfc.] a survey, if it were hot of waste and unappropriated lands, was not before confirmed by the same act.
■And will not the words ‘ to which no other person hath a prior e legal clame or title ’ include an exemption of the surveys so confirmed?] this is the fourth petitio principii occuring in less than twice fqur lines, to which the answer is, the words recited do not include an exemption of surveys, if the lands surveyed were not waste and unappropriated, because those surveys were-not confirmed by the act.
I am sure the interpretation is more natural, more proper, Sfcf] the interpretation here meant is that, by which a survey of lands is'good and valid, although the land had been settled before the *69 survey, and the other interpretation is that hy which such a survey is not good and valid, confidence cannot determine which interpretation is more natural, more proper, more consistent with the act, and more consistent with the principles of justice, however, as much confidence is on the side of the latter interpretation as is on the side of the former. *

 [That is, lie-instated the cassation j or quashed the writ. See Maze v. Hamilton, 4 Call. 35.—Ed.]

 [See this Order in the case of the Greenbrier and Loyal Co’s., 4 Call, 32. That case decides, that the Indian war in 1754, and the subsequent acts of the-kingly government preventing the settlement of the lands lying within the boundaries claimed by the Loyal and Greenbrier Co.’s, were sufficient excuses for those companies, for not completing their surveys, and obtaining patents for the lands within the periods prescribed by the orders of council under which they were claimed. And shews that
*53 Waste lands, before the revolution, were taken up by order of council- its An ral cases: and by warrant from the governor, for military services. An ort'iy in the council books, if followed by an order of council, gave priority of grmsiL The report contains also forms of the orders in council. 4 Call, 21.—Ed.]

 [The opinion of the court on this appeal was delivered by President Pendleton, and rules as follows:
Orders of council before the revolution in favor of companies for large tracts of unappropriated land were valid ; and surveys under them were secured by the act of 1779. (10th Hen.Stat. at large, 35^50;) and theCourt of Appeals had exclusive jurisdiction in such cases. The Greenbrier Company was of that description ; and their surveys before the date of independence good. A settler upon such a survey was, by the 7th section of ihe act of 1779, entitled to only 300 acres, but upon a caveat to the survey, the General Court might, under circumstances, have allowed him 400 acres; when the survey was made for a wrong-doer to the settler. A right of settlement was allowed to betaken ontof the survey, but a pre-emption was not. Therefore, where a judgment of the Genetal Court directed the settlement and pre emption both to be taken out of the survey, and a bill in chancery was brought to enforce the judgment and set as de a patent upon the survey, the defended might resist the pre-emption, but m t the settlement. A patent obtained for the whole survey after the judgment of the General Court, was fraudulentas to the settlement; and the patentee was decreed to convey that part of the survey to the settler. A party who can ca-veat ought todo so; but circumstances may excuse it. Hamilton v. Maze, 4 Call, 196. — Ed.]

 [The Court of Appeals n ¡ -.u understand it so. See 4 Call, 207, 8, 9. As to the jurisdiction of the G. , ’ Court, see 4 Call, 33; and as to that of the Court of Appeals see Id. 24, . ' rev. 94 and 96: and 10 Hen. stat. 42, 50, as to all the jurisdictions.—Ed.]

 [The Court of Appeals held that neither the company, nor Hamilton was bound by the former proceedings. The company, because it was not a party thereto, and-H., because he could not then have.used the title he derived Irom the company, as he had not paid the purchase money. 4 Call., 208.—Ed.]

[This case came again under review hy the Court of Appeals, in Reid v. Burnsides, 2 Wash. 47-8, where Carrington,for the court, said ; “notwithstanding the criticisms that have been passed upon that decision, (Maze v. Hamilton, 4 Call,) this court upon a revision of tiiat case corisidpr it to have been determined in strict conformity with the law and agreeably to the principles of equity.” This was said prior to the publication of the foregoing commentary ; so that the chancellor must have given earlier expression to ins object ions to “ that decision and after several not inattentive perusals of it, the above “criticisms” and others with which they could be easily fortified, appear very difficult to be answered. See Reid v. Burnsides, in this volume. — Ed.]

[* As to what are “waste arid 'unappropriated lands,” see French v. Loyal company, 5 Leigh 627; which held, that “ a survey made for the Loyal Company, or its assignee, under orders of the colonial council, though recognized by the.stat. of 1779 lor settling the rights ol claimers to unpatented lands, and held ■ valid by the Court of Appeals, not being carried into grant, does not vest any title in the company, or its assignee; and land so surveyed for the company is .still waste and unappropriated withi.n the meaning of the land laws, subject to location, survey and grant, and such grant passes the legal title to the junior locator,- though equity may relieve the company against it for fraud practised by ’him in procuring the grant.” Were not the lands, then, “ waste and unappropriated” when Mase was allowed his pre-emption out of them, by the judgment of' the general court? — Ed.]